Geoffrey T. Raicht
Margaret A. Dale
Jared D. Zajac
Lee M. Popkin
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Petitioners*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> CALEDONIAN BANK LIMITED, <br><br> Debtor in a Foreign Proceeding. | Chapter 15 <br><br> Case No. 15-\_\_\_\_\_ (\_\_\_) |

**VERIFIED PETITION FOR ORDER RECOGNIZING FOREIGN MAIN
PROCEEDING AND GRANTING ADDITIONAL RELIEF**

Keiran Hutchison and Claire Loebell of Ernst & Young Ltd., as the duly authorized joint controllers (together, the "Petitioners") of Caledonian Bank Limited (the "Debtor"), respectfully file an official form petition and this verified petition (together, the "Petition") for an order, substantially in the form attached hereto as **Exhibit A**, recognizing the controllership of the Debtor (the "Cayman Proceeding") as confirmed by the Grand Court of the Cayman Islands (the "Cayman Court") as a foreign main proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code") and granting certain additional relief pursuant to section 1521 of the Bankruptcy Code.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

2. This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by filing the Petition for recognition of the Cayman Proceeding in accordance with section 1515 of the Bankruptcy Code.[1]

3. The Debtor has assets and accounts located in this district, and thus venue is proper pursuant to 28 U.S.C. § 1410.

4. The statutory bases for relief are sections 1504, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

### I.  The Debtor's Business

5. The Debtor is a wholly-owned subsidiary of Caledonian Global Financial Services, Inc. ("CGFSI"), a well-known specialized financial services provider in the Cayman Islands. The Debtor was incorporated in the Cayman Islands in 2007, and its registered office and headquarters is located in Georgetown, Grand Cayman, Cayman Islands. All of the Debtor's offices and employees are located in the Cayman Islands, and the members of its board of directors (the "Board") reside in the Cayman Islands and have historically held their meetings in the Cayman Islands.

6. The Debtor's principal business activities included issuing financial instruments and providing fiduciary and administrative services, including custody services to customers of its non-debtor broker-dealer affiliate, Caledonian Securities Limited ("Caledonian Securities").[2] More specifically, the Debtor accepted deposits from customers[3] at fixed rates for various periods and sought to earn an interest margin by placing these funds with creditworthy

---

[1] The Debtor is a foreign bank without a branch or agency in the United States. Thus, the Debtor is eligible to be a debtor pursuant to section 109 of the Bankruptcy Code.

[2] The Petitioners have also been appointed as joint controllers of Caledonian Securities.

[3] The Debtor's customers include customers in the Cayman Islands, the United States, and elsewhere.

counterparties at higher rates. The Debtor has approximately 1,550 customers and nearly 1,900 active accounts. The Debtor's assets (*i.e.*, customer deposits) are principally held in two United States accounts: a cash account with The Northern Trust International Banking Corp. (the "Northern Trust Account") and a securities account with Morgan Stanley Smith Barney LLC (the "Morgan Stanley Account"). The Debtor does not have a branch in the United States but arranges transfers through The Northern Trust International Banking Corp. which acts as a correspondent bank.

7. As of January 31, 2015, the Debtor had total assets of approximately $585 million, approximately $388 million of which was cash on deposit with other financial institutions or liquid fixed income investments, and total liabilities of approximately $560 million, approximately $520 million of which was repayable to depositors on demand. Based upon the best information available as of the filing of the Petition, approximately 51 percent of the Debtor's assets are located in the United States, with approximately $132 million located in the Northern Trust Account and approximately $169 million of securities in the Morgan Stanley Account.

8. The Debtor is a class "A" licensed bank in the Cayman Islands and is licensed to conduct banking business in the Cayman Islands pursuant to the Banks and Trust Companies Law (2013 Revision) (the "BTC Law"). The Debtor is subject to regulatory oversight by the Cayman Islands Monetary Authority ("CIMA").

## II.    Events Leading to Cayman Proceeding

9. On Friday, February 6, 2015, the Securities and Exchange Commission (the "SEC") commenced an action, captioned *Securities and Exchange Commission v. Caledonian Bank Ltd., et al.*, against the Debtor, Caledonian Securities, and three other entities in the United States District Court for the Southern District of New York. *See* Civ. A. No. 15-894 (WHP) (the

"SEC Action"). The complaint alleges violations of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e) and suggests that, from January 2013 to August 2013, the Debtor profited from the sale of common stock in four shell companies that did not have a valid registration statement on file or in effect, as required by Section 5. The Debtor disputes the complaint's allegations.

10. Later that same day, Judge William H. Pauley III of the United States District Court for the Southern District of New York (the "District Court") granted the SEC's application for a temporary restraining order freezing the Debtor's United States-based assets, including all amounts held in the Northern Trust Account and the Morgan Stanley Account, and ordering repatriation of proceeds from the Debtor's stock sales to the United States (the "TRO").[4]

11. The freezing of such a large percentage of the Debtor's assets had a crippling effect on the Debtor's liquidity. Upon learning that the Debtor's United States assets were frozen, the Debtor's customers began making requests to withdraw funds from their accounts with the Debtor. The withdrawal requests began the evening of February 6th and continued throughout the weekend. The Debtor, recognizing its only hope to continue as a going concern was to free up liquidity to meet its customers' requests, immediately engaged in negotiations with the SEC to modify the TRO. The Debtor and SEC negotiated through the weekend of February 7th and 8th, ultimately reaching an agreement to modify the TRO, which was entered as an order by the District Court. The TRO was further modified on Monday, February 9, 2015, and the District Court entered an agreed order that waived the asset freeze and repatriation provisions, subject to the limitation that the Debtor must maintain a balance of at least $10 million in cash in the Northern Trust Account and $66,677,852 in securities in the Morgan

---

[4] As of the filing of the Petition, a hearing on the SEC's request for a preliminary injunction with respect to the relief granted in the TRO is scheduled for 10:00 a.m. (EST) on February 20, 2015. Based upon discussions with the SEC, the Debtor expects to file a stipulation that will adjourn the preliminary injunction hearing and extend certain terms of the TRO beyond February 20, 2015.

Stanley Account. The Debtor hoped that the unfreezing of its United States assets would calm its depositors and allow it to meet the withdrawal demands of its customers.

12. While the Debtor was negotiating with the SEC over the February 7th and 8th weekend, it also reviewed (i) all withdrawal requests that had been received since the close of business on February 6th; (ii) the Debtor's cash, cash-equivalents and readily realizable assets, including those assets that would be made available pursuant to the modified TRO; and (iii) the likely number of withdrawal requests the Debtor would receive when it opened for business on Monday, February 9th. Based upon its review and the expectation that the SEC would agree to modify the TRO, the Debtor determined that it should be able to meet withdrawal requests and concluded that the Debtor should open for business as normal on February 9th.

13. However, on February 9th the Debtor received a substantially larger number of withdrawal requests than expected, rendering the Debtor cash flow insolvent. As a result of the Debtor's depositors' demands, the Debtor suspended operation of all services, including accepting deposits and processing withdrawals, on February 9, 2015.

14. In response to the Debtor's suspension of services, CIMA exercised its regulatory powers under the BTC Law.[5] Pursuant to section 18(1)(v) of the BTC Law, CIMA has the authority to appoint a controller that has all the powers of a receiver or manager of a business appointed under section 18 of the Bankruptcy Law (1997 Revision) (the "Bankruptcy Law").[6] On February 10, 2015, CIMA appointed the Petitioners as the Debtor's joint controllers pursuant to the BTC Law.

---

[5] A copy of the BTC Law is attached hereto as **Exhibit B**.

[6] The Bankruptcy Law provides for the bankruptcy and adjustment of debts of a Cayman person. As described by one commentator, the effect of a Cayman Court ordering the appointment of a receiver or manager under the Bankruptcy Law "vest[s] the debtor's assets in the trustee in bankruptcy who is responsible for transferring the assets and administering the estate. However, at the court's discretion, the debtor may be discharged, suspended, or have conditions imposed upon the discharge of his assets depending upon the surrounding circumstances and the conduct of the debtor." *See* Lee, Stacey, *Piercing Offshore Asset Protection Trusts In the Cayman Islands: The Creditors'* View, 11 Transnat'l Law. 463 (Fall 1998).

15. Also on February 10, 2015, and after the Petitioners were appointed as the Debtor's joint controllers, the sole shareholder of the Debtor, CGFSI, passed resolutions placing the Debtor into voluntary liquidation under the Companies Law (2013 Revision) (the "Companies Law") and appointing Gordon MacRae and Eleanor Fisher of Zolfo Cooper (Cayman) Limited as the joint voluntary liquidators ("JVLs") of the Debtor.

16. On February 11, 2015, the JVLs filed a petition with the Cayman Court seeking, among other relief, court authorization to control the affairs of, and court supervised liquidation of, the Debtor. The Petitioners objected to the JVLs' petition on the grounds that they are charged with the administration of the Debtor's estate and made an oral application to the Cayman Court to confirm their powers under section 18 of the BTC Law.

17. On February 12, 2015, the Cayman Court dismissed the JVLs' petition and granted the Petitioners' oral application. A copy of the order dismissing the JVLs' petition and granting the Petitioners' oral application (the "Cayman Order") are attached as Exhibits A and B, respectively, to the declaration of Keiran Hutchison in support of the Petition (the "Hutchison Declaration"), filed contemporaneously herewith. The Cayman Order makes clear that the JVLs have no power or control over the Debtor and that all powers over the Debtor rest with the Petitioners.

18. The Cayman Order empowers the Petitioners to take necessary actions to protect the Debtor's assets and prevent any further diminution in value of the Debtor's assets. The Cayman Order confirms the Petitioners' powers granted to them under section 18 of the BTC Law and section 18 of the Bankruptcy Law and authorizes the Petitioners to act in accordance with such powers. Specifically, the Petitioners may, among other things:

- assume control of and collect all property and assets of the Debtor;
- locate and recover all debts due to the Debtor;

- make such compromise or other arrangement with creditors of the Debtor in respect of any debts of the debtor, including the proposal of a scheme of arrangement;

- commence a proceeding under chapter 15 of the Bankruptcy Code; and

- apply to the Cayman Court for relief or direction in connection with their powers.

*See* Order at §§ 1(a), (c)(ii), (d)(iii), (e), (m).

19. The Petitioners seek chapter 15 recognition in order to aid in the orderly administration of the Cayman Proceeding. Absent recognition of the Cayman Proceeding under chapter 15 and imposition of the automatic stay, depositors of the Debtor may attempt to seize the Debtor's assets located in the United States. Indeed, the Petitioners are aware that certain depositors of the Debtor have already retained Cayman counsel. The Petitioners fear a "race to the courthouse" scenario, whereby certain creditors are able to seize the Debtor's United States assets for such creditors' exclusive benefit. Such a result would harm the Debtor's creditors as a whole. Recognition of the Cayman Proceeding under chapter 15 will prevent such a scenario and ensure the Petitioners can carry out their duties pursuant to the Cayman Order.

## RELIEF REQUESTED

20. The Petitioners respectfully request an order, substantially in the form attached hereto as **Exhibit A**:

(a) recognizing the Cayman Proceeding, pursuant to section 1517 of the Bankruptcy Code, as a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code;

(b) granting relief automatically and as of right upon recognition of the Cayman Proceeding as a foreign main proceeding pursuant to section 1520(a) of the Bankruptcy Code; *provided*, *however*, the automatic stay made applicable by section 1520(a)(1) of the Bankruptcy Code shall (i) be subject to the TRO, as or as may be modified;[7] and (ii) not enjoin a police or regulatory act of a governmental unit to the extent provided in section 362(b)(4) of the Bankruptcy Code;

---

[7] By recognizing the effect of the TRO, the Debtor is not making any admission with respect to the SEC Action.

(c) granting certain additional relief pursuant to section 1521(a) of the Bankruptcy Code, including an injunction prohibiting all persons and entities, other than the Petitioners and their representatives and agents, from: (i) commencing or continuing an action or proceeding concerning the Debtor's assets, rights, obligations, or liabilities; (ii) executing against any of the Debtor's assets; (iii) taking or continuing any act to create, perfect, or enforce a lien or other security interest, setoff, or other claim against the Debtor or its property; (iv) transferring, relinquishing, or disposing of any property of the Debtor to any person or entity other than the Petitioners; or (v) declaring or considering the commencement of the Cayman Proceeding or the Debtor's chapter 15 case a default under any agreement, contract, or arrangement; *provided*, *however*, the foregoing injunction shall (1) be effective solely within the territorial jurisdiction of the United States; (2) be subject to the TRO, as or as may be modified; and (3) not enjoin a police or regulatory act of a governmental unit to the extent provided in section 362(b)(4) of the Bankruptcy Code;

(d) pursuant to sections 1521(a)(5) and (b) of the Bankruptcy Code, entrusting the administration, realization, and distribution of the Debtor's assets located in the territorial jurisdiction of the United States to the Petitioners;

(e) otherwise granting comity to and giving full force and effect to the Cayman Proceeding; and

(f) awarding the Petitioners such other relief as this Court may deem just and proper.

**BASIS FOR RELIEF REQUESTED**

**I.   The Petitioners Satisfy all Requirements for Recognition under Section 1517(a)**

21. Section 1517(a) of the Bankruptcy Code provides that "an order recognizing a foreign proceeding shall be entered if … (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a). Section 1517(b) of the Bankruptcy Code provides that a foreign proceeding "shall be recognized … (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). The Petitioners submit that all of the requirements for recognition of a foreign main proceeding are satisfied. 11 U.S.C. § 1502(4).

A. **The Cayman Proceeding is a Foreign Main Proceeding**

22. Under section 1502(4) of the Bankruptcy Code, the term "foreign main proceeding" means "a foreign proceeding pending in the country where the debtor has the center of its main interests."

1. The Cayman Proceeding Satisfies the Requirements of Section 101(23)

23. Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country … under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

24. An analysis of the definition of the term "foreign proceeding" demonstrates that the Cayman Proceeding, which is governed by the BTC Law and the Bankruptcy Law, without question satisfies the requirements of section 101(23) of the Bankruptcy Code. The Cayman Proceeding is a "collective judicial proceeding" as the Petitioners have the power to resolve claims, refer claims to an arbitrator, control and collect assets, and take actions to safeguard the interests of the Debtor's depositors and creditors. *See* Cayman Order §§ 1(d), (e), (f). As demonstrated by these powers, the Cayman Proceeding is a collective judicial proceeding because included among the purposes of such proceeding is to resolve and determine the rights of all claimants and stakeholders, *i.e.,* the creditor body as a whole.

25. Further, each of the Bankruptcy Law and the BTC Law is a "law relating to insolvency or adjustment of debt" as (i) the Bankruptcy Law is a law that relates to the adjustment of debts; and (ii) the BTC Law grants a controller with all the powers a receiver has under the Bankruptcy Law. In addition, the Cayman Order grants the Petitioners with the power

to resolve claims and propose a scheme of arrangement which is the legal vehicle by which distributions are made to creditors. *See* Cayman Order § 1(d).

26. Next, the Cayman Proceeding is subject to "control or supervision by a foreign court" as the Petitioners had to apply and obtain an order from the Cayman Court authorizing their powers to control the affairs of the Debtor and, under the Cayman Order, the Petitioners may seek relief from the Cayman Court regarding the Cayman Proceeding. *See* Cayman Order § 1(m).

27. Moreover, in interpreting section 101(23) of the Bankruptcy Code, courts have held that a regulatory body qualifies as a "foreign court" when it supervises or controls the assets of a debtor. *See In re Tradex Swiss AG*, 384 B.R. 34, 42 (Bankr. D. Mass. 2008) ("Even if the decree of the SFBC [Swiss Federal Banking Commission] were not subject to appeal to the Swiss Federal Administrative Court, and then the Swiss Federal Supreme Court, the SFBC itself comes within the definition of a foreign court"); *In re Betcorp Ltd.*, 400 B.R. 266, 284 (Bankr. D. Nev. 2009) (Australian Securities and Investment Commission is an authority competent to control and supervise a voluntary wind-up proceeding within the meaning of sections 101(23) and 1502). These courts rely on section 1502 of the Bankruptcy Code, which defines "foreign court" for the purpose of chapter 15 as a "judicial *or other authority* competent to control or supervise a foreign proceeding." 11 U.S.C. § 1502(3) (emphasis added).

28. In this case, even if the Cayman Proceeding is not subject to the control of the Cayman Court, which it is, CIMA would qualify as a "foreign court" for purposes of chapter 15 recognition as CIMA retains a supervisory role over the Cayman Proceeding. Pursuant to section 18(3) of the BTC Law and section 6 of the Cayman Order, CIMA receives reports regarding the administration of the Debtor and, under section 18(4)(c) of the BTC Law and section 1(d) of the Cayman Order, can influence how the Debtor's controllership is to proceed.

Further, under section 19 of the BTC Law, CIMA can apply to the Cayman Court to ensure the controllership of the Debtor is being conducted in the best interest of its stakeholders. Thus, since CIMA initially appointed the Petitioners as joint controllers and retains supervisory powers, the Cayman Proceeding is controlled or supervised by a foreign court. *See In re Tradex Swiss AG*, 384 B.R. at 42 (proceeding initiated by an administrative agency with authority to regulate banks and brokers constituted foreign proceeding); *Betcorp Ltd.*, 400 B.R. at 284 (entity that can appoint and revoke liquidators and can control actions in a proceeding falls within the meaning of sections 101(23) and 1502).

29. Although the typical Cayman insolvency proceeding is conducted under the Companies Law,[8] courts in this and other districts have held insolvency proceedings under the Bankruptcy Law and other similar laws satisfy section 101(23)'s requirements. *See*, *e.g.*, *In re Millard, et al.*, No. 13-11625 (REG) (S.D.N.Y. Nov. 4, 2014) [Docket No. 27] (recognizing as a foreign main proceeding a proceeding conducted under the Bankruptcy Law); *In re The International Banking Corp.*, 09-17318 (SMB) (Bankr. S.D.N.Y. Jan. 15, 2010 (recognizing an administration under the Bahrain Central Banking Law as a foreign main proceeding); *In re Stanford International Bank, Ltd.*, No. 09-0721 (DCG) (N.D. Tex. July 30, 2012) (proceeding under the Antigua and Barbuda International Business Corporations Act, which contains a similar winding up provision as the BTC Law, was a foreign main proceeding).

    2.    <u>The Cayman Proceeding Qualifies as a Foreign "Main" Proceeding</u>

30. Once it is determined that the Cayman Proceeding is a foreign proceeding, the question becomes whether the foreign proceeding is entitled to recognition, and if so, whether as a foreign "main" or "nonmain" proceeding.

---

[8] Although the Cayman Proceeding is currently proceeding under the BTC Law and the Bankruptcy Law, the Petitioners are contemplating filing a petition to commence an official liquidation of the Debtor under the Companies Law. The Debtor will immediately advise this Court should the Cayman Court appoint the Petitioners as Joint Official Liquidators of the Debtor. Accordingly, the Petitioners reserve their right to seek relief as a foreign proceeding in the form of an official liquidation under Cayman law.

31.     Section 1502(4) of the Bankruptcy Code defines a foreign "main" proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). Thus, it must be shown that the Cayman Proceeding is pending where the center of the Debtor's main interests are located in order for the Cayman Proceeding to be considered a foreign "main" proceeding.

32.     Section 1516(c) of the Bankruptcy Code provides "absen[t] evidence to the contrary, the debtor's registered office … is presumed to be the center of the debtor's main interests." The Bankruptcy Code does not define "center of … main interests" ("COMI") but courts have held the term "generally equates with the concept of 'principal place of business' in the United States." *In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (quoting *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (E.D. Cal. 2006)); *see also In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 48 (Bankr. S.D.N.Y. 2008) (using the terms COMI and "principal place of business" interchangeably).

33.     In undertaking a COMI analysis, courts may consider "any relevant activities, including liquidation activities and administrative functions … the location of the debtor's headquarters; the location of those who actually manage the debtor … the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (citing *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013)).

34.     As noted above, the Debtor's registered office is located in the Cayman Islands, which is therefore its presumptive COMI under section 1516(c) of the Bankruptcy Code. This presumption of COMI is confirmed by the following additional facts: the Petitioners are

conducting the controllership of the Debtor in the Cayman Islands; the Debtor is, and always has been, headquartered in the Cayman Islands; all of the Debtor's employees are located in the Cayman Islands; the Debtor has always held itself out as a Cayman Islands bank; and Cayman Islands law governs the Debtor's internal affairs and many critical agreements relating to its business.

### 3. Alternatively, the Cayman Proceeding is a Foreign Nonmain Proceeding

35. Section 1502(5) of the Bankruptcy Code defines "foreign nonmain proceeding" as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). Section 1502(2) of the Bankruptcy Code defines "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). As the Debtor is registered and headquartered in the Cayman Islands, there can be little doubt it carried out nontransitory economic activity there.

### B. The Petitioners are a Qualifying Foreign Representative

36. Section 101(24) of the Bankruptcy Code defines "foreign representative" as "a person … authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." The Petitioners are individuals, and thus "persons" under section 101(41) of the Bankruptcy Code. Further, the Petitioners are authorized to administer the controllership of the Debtor's assets and act as a representative of the Cayman Proceeding. Specifically, the Cayman Order explicitly authorized the Petitioners to seek recognition of the Cayman Proceeding under chapter 15 of the Bankruptcy Code. *See* Cayman Order § 1(c)(ii). Accordingly, the Petitioners have prepared and submitted the Petition to commence this chapter 15 case.

### C. The Petition Meets the Requirements of Bankruptcy Code Section 1515

37. The final requirement for recognition of a foreign main proceeding is compliance with the procedural and evidentiary requirements of section 1515 of the Bankruptcy Code. Section 1515 (i) requires that a petition be filed with the court and (ii) lists the documents and statements that must accompany the petition for recognition. *See* 11 U.S.C. § 1515. The Petitioners have satisfied all of the procedural requirements set forth in section 1515 of the Bankruptcy Code.

38. First, the Petition in this case was properly filed by the Petitioners on behalf of the Debtor, as required by section 1515(a) of the Bankruptcy Code.

39. Second, in accordance with section 1515(b) of the Bankruptcy Code, documents evidencing the Cayman Proceeding's existence and the Petitioners' appointment are attached as Exhibit B to the Hutchison Declaration. In accordance with section 1515(c) of the Bankruptcy Code, which requires that a foreign representative list all known foreign proceedings pending with respect to a debtor, the Hutchison Declaration includes a statement that the Cayman Proceeding is the only foreign proceeding with respect to the Debtor known to the Petitioners. In addition, the Hutchison Declaration includes all information required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure, except the names and addresses of the Debtor's customers. Contemporaneously herewith, in order to comply with the Confidential Relationships Preservation Law (2009 Revision) which requires the identity of depositors to remain confidential, the Petitioners filed a motion for an order waiving the requirement that such names and addresses be disclosed.

### II. The Petitioners' Request Necessary and Appropriate Relief under Section 1521(a)

40. Pursuant to section 1521(a) of the Bankruptcy Code, the Petitioners request that this Court enter an order granting certain additional relief described above. Upon recognition of

the Cayman Proceeding, this Court may grant "any appropriate relief" under section 1521(a) of the Bankruptcy Code where necessary to effectuate chapter 15's purpose and protect the Debtor's assets or the interests of its creditors. The additional relief requested is "appropriate" because it is necessary to ensure the Cayman Proceeding's success.

41. Pursuant to section 1522(a) of the Bankruptcy Code, this Court may only grant additional relief under section 1521(a) of the Bankruptcy Code if creditor interests are "sufficiently protected." Legislative history indicates this limitation was meant to apply where "it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." *See* H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 116 (2005). A determination of sufficient protection requires a balancing of the respective parties' interests. *See*, *e.g.*, *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013) (citing *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012)); *CT Inv. Mgmt. Co. v. Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012).

42. Here, creditors are "sufficiently protected" by the treatment afforded them by the Cayman Proceeding and the process by which a liquidation will be consummated because similarly situated creditors will be treated equally, United States creditors would not be subject to undue prejudice, and the distribution of the Debtor's assets is similar to what might occur under United States law. Moreover, the relief requested under section 1521(a) of the Bankruptcy Code is necessary to ensure the Cayman Proceeding's success, as noted above.

WHEREFORE, the Petitioners respectfully request an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated: February 16, 2015               Respectfully submitted,
       New York, New York
                                       /s/ *Geoffrey T. Raicht*

        Geoffrey T. Raicht
        Margaret A. Dale
        Jared D. Zajac
        Lee M. Popkin
        PROSKAUER ROSE LLP
        Eleven Times Square
        New York, New York 10036
        Tel: (212) 969-3000
        Fax: (212) 969-29000

        *Attorneys for the Petitioners*