UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

CALEDONIAN BANK LIMITED,

Debtor in a Foreign Proceeding.

Chapter 15

Case No. 15-_____ (___)

## DECLARATION OF KEIRAN HUTCHISON
## IN SUPPORT OF PETITION FOR ORDER RECOGNIZING
## FOREIGN MAIN PROCEEDING AND GRANTING ADDITIONAL RELIEF

I, Keiran Hutchison, hereby declare:

1. I am a partner of Ernst & Young Ltd. and one of the joint controllers (together with my colleague, Claire Loebell, the "Petitioners") of Caledonian Bank Limited (the "Debtor"). I submit this declaration in support of our official form and verified petitions (together, the "Petition") for an order recognizing the controllership of the Debtor (the "Cayman Proceeding") as confirmed by the Grand Court of the Cayman Islands (the "Cayman Court") as a foreign main proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code") and granting certain additional relief. I am competent to testify and, except where otherwise indicated, all facts and statements included in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me or verified by the Debtor or the Debtor's other professional advisors and/or my opinion based upon my knowledge of the Debtor generally.

## BACKGROUND

I. **The Debtor's Business**

1. The Debtor is a wholly-owned subsidiary of Caledonian Global Financial Services, Inc. ("CGFSI"), a well-known specialized financial services provider in the Cayman

Islands. The Debtor was incorporated in the Cayman Islands in 2007, and its registered office and headquarters is located in Georgetown, Grand Cayman, Cayman Islands. All of the Debtor's offices and employees are located in the Cayman Islands, and the members of its board of directors (the "Board") reside in the Cayman Islands and have historically held their meetings in the Cayman Islands.

2.      The Debtor's principal business activities included issuing financial instruments and providing fiduciary and administrative services, including custody services to customers of its non-debtor broker-dealer affiliate, Caledonian Securities Limited ("Caledonian Securities").[1] More specifically, the Debtor accepted deposits from customers[2] at fixed rates for various periods and sought to earn an interest margin by placing these funds with creditworthy counterparties at higher rates. The Debtor has nearly 1,550 customers and nearly 1,900 active accounts. The Debtor's assets (*i.e.*, customer deposits) are principally held in two United States accounts: a cash account with The Northern Trust International Banking Corp. (the "Northern Trust Account") and a securities account with Morgan Stanley Smith Barney LLC (the "Morgan Stanley Account"). The Debtor does not have a branch in the United States but arranges transfers through The Northern Trust International Banking Corp. which acts as a correspondent bank.

3.      As of January 31, 2015, the Debtor had total assets of approximately $585 million, approximately $388 million of which was cash on deposit with other financial institutions or liquid fixed income investments, and total liabilities of approximately $560 million, approximately $520 million of which was repayable to depositors on demand. Based upon the best information available as of the filing of the Petition, approximately 51 percent of

---

[1] The Petitioners have also been appointed as joint controllers of Caledonian Securities.

[2] The Debtor's customers include customers in the Cayman Islands, the United States, and elsewhere.

2

the Debtor's assets are located in the United States, with approximately $132 million located in the Northern Trust Account and approximately $169 million of securities in the Morgan Stanley Account.

4.     The Debtor is a class "A" licensed bank in the Cayman Islands and is licensed to conduct banking business in the Cayman Islands pursuant to the Banks and Trust Companies Law (2013 Revision) (the "BTC Law").  The Debtor is subject to regulatory oversight by the Cayman Islands Monetary Authority ("CIMA").

II.    **Events Leading to Cayman Proceeding**

5.     On Friday, February 6, 2015, the Securities and Exchange Commission (the "SEC") commenced an action, captioned *Securities and Exchange Commission v. Caledonian Bank Ltd., et al.*, against the Debtor, Caledonian Securities, and three other entities in the United States District Court for the Southern District of New York.  *See* Civ. A. No. 15-894 (WHP) (the "SEC Action").  As I understand based on conversations with the Debtor's United States counsel, the complaint alleges violations of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e) and suggests that, from January 2013 to August 2013, the Debtor profited from the sale of common stock in four shell companies that did not have a valid registration statement on file or in effect, as required by Section 5.  The Debtor disputes the complaint's allegations.

6.     As I understand based on conversations with the Debtor's United States counsel, later that same day, Judge William H. Pauley III of the United States District Court for the Southern District of New York (the "District Court") granted the SEC's application for a temporary restraining order freezing the Debtor's United States-based assets, including all amounts held in the Northern Trust Account and the Morgan Stanley Account, and ordering repatriation of proceeds from the Debtor's stock sales to the United States (the "TRO").

7. The freezing of such a large percentage of the Debtor's assets had a crippling effect on the Debtor's liquidity. Upon learning that the Debtor's United States assets were frozen, the Debtor's customers began making requests to withdraw funds from their accounts with the Debtor. The withdrawal requests began the evening of February 6th and continued throughout the weekend. The Debtor, recognizing its only hope to continue as a going concern was to free up liquidity to meet its customers' requests, immediately engaged in negotiations with the SEC to modify the TRO. The Debtor and SEC negotiated through the weekend of February 7th and 8th, ultimately reaching an agreement to modify the TRO, which was entered as an order by the District Court. As I understand based on conversations with the Debtor's United States counsel, the TRO was further modified on Monday, February 9, 2015, and the District Court entered an agreed order that waived the asset freeze and repatriation provisions, subject to the limitation that the Debtor must maintain a balance of at least $10 million in cash in the Northern Trust Account and $66,677,852 in securities in the Morgan Stanley Account. The Debtor hoped that the unfreezing of its United States assets would calm its depositors and allow it to meet the withdrawal demands of its customers.

8. While the Debtor was negotiating with the SEC over the February 7th and 8th weekend, it also reviewed (i) all withdrawal requests that had been received since the close of business on February 6th; (ii) the Debtor's cash, cash-equivalents and readily realizable assets, including those assets that would be made available pursuant to the modified TRO; and (iii) the likely number of withdrawal requests the Debtor would receive when it opened for business on Monday, February 9th. Based upon its review and the expectation that the SEC would agree to modify the TRO, the Debtor determined that it should be able to meet withdrawal requests and concluded that the Debtor should open for business as normal on February 9th.

4

9.  However, on February 9th the Debtor received a substantially larger number of withdrawal requests than expected, rendering the Debtor cash flow insolvent. As a result of the Debtor's depositors' demands, the Debtor suspended operation of all services, including accepting deposits and processing withdrawals, on February 9, 2015.

10.  In response to the Debtor's suspension of services, CIMA exercised its regulatory powers under the BTC Law. Pursuant to section 18(1)(v) of the BTC Law, CIMA has the authority to appoint a controller that has all the powers of a receiver or manager of a business appointed under section 18 of the Bankruptcy Law (1997 Revision) (the "Bankruptcy Law"). On February 10, 2015, CIMA appointed me and Ms. Loebell as the Debtor's joint controllers pursuant to the BTC Law.

11.  Also on February 10, 2015, and after the Petitioners were appointed as the Debtor's joint controllers, the sole shareholder of the Debtor, CGFSI, passed resolutions placing the Debtor into voluntary liquidation under the Companies Law (2013 Revision) (the "Companies Law") and appointing Gordon MacRae and Eleanor Fisher of Zolfo Cooper (Cayman) Limited as the joint voluntary liquidators ("JVLs") of the Debtor.

12.  On February 11, 2015, the JVLs filed a petition with the Cayman Court seeking, among other relief, court authorization to control the affairs of, and court supervised liquidation of, the Debtor. Ms. Loebell and I objected to the JVLs' petition on the grounds that we are charged with the administration of the Debtor's estate and made an oral application to the Cayman Court to confirm our powers under section 18 of the BTC Law.

13.  On February 12, 2015, the Cayman Court dismissed the JVLs' petition and granted our oral application. A copy of the order dismissing the JVLs' petition and granting our oral application (the "Cayman Order") are attached hereto as **Exhibits A and B**, respectively.

5

The Cayman Order makes clear that the JVLs have no power or control over the Debtor and that all powers over the Debtor rest with the Petitioners.

14. The Cayman Order empowers Ms. Loebell and me, in our capacity as joint controllers, to take necessary actions to protect the Debtor's assets and prevent any further diminution in value of the Debtor's assets. The Cayman Order confirms the powers granted to Ms. Loebell and me under section 18 of the BTC Law and section 18 of the Bankruptcy Law and authorizes us to act in accordance with such powers. Specifically, Ms. Loebell and myself may, among other things:

- assume control of and collect all property and assets of the Debtor;
- locate and recover all debts due to the Debtor;
- make such compromise or other arrangement with creditors of the Debtor in respect of any debts of the debtor, including the proposal of a scheme of arrangement;
- commence a proceeding under chapter 15 of the Bankruptcy Code; and
- apply to the Cayman Court for relief or direction in connection with their powers.

*See* Order at §§ 1(a), (c)(ii), (d)(iii), (e), (m).

15. We seek chapter 15 recognition in order to aid in the orderly administration of the Cayman Proceeding. Absent recognition of the Cayman Proceeding under chapter 15 and imposition of the automatic stay, depositors of the Debtor may attempt to seize the Debtor's unprotected assets located in the United States. Indeed, we are aware that certain depositors of the Debtor have already retained Cayman counsel. We fear a "race to the courthouse" scenario, whereby certain creditors are able to seize the Debtor's United States assets for such creditors' exclusive benefit. Such a result would harm the Debtor's creditors as a whole.

**STATEMENT PURSUANT TO BANKRUPTCY CODE SECTION 1515(c)**

16. I have been advised that section 1515(c) of the Bankruptcy Code provides "[a] petition for recognition shall … be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." In accordance with this section, I hereby declare the only foreign proceeding, as I understand such term is defined in section 101(23) of the Bankruptcy Code, pending with respect to the Debtor that is known to the Petitioners is the Cayman Proceeding.

**INFORMATION REQUIRED BY BANKRUPTCY RULE 1007(a)(4)**

17. I have been advised Federal Rule of Bankruptcy Procedure 1007(a)(4) provides:

> [A] foreign representative … shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is sought.

Accordingly, I respectfully state:

18. <u>Corporate Ownership Statement</u>. The following corporations directly or indirectly own 10% or more of the Debtor's equity interests: Caledonian Global Financial Services, Inc.

19. <u>Persons/Bodies Authorized to Administer the Cayman Proceeding</u>. Per Exhibit B, Ms. Loebell and I were appointed as joint controllers by CIMA and subsequently recognized and authorized to act as joint controllers pursuant to the Cayman Order entered by the Cayman Court. Our mailing address is Ernst & Young Ltd., P.O. Box 510GT, 62 Forum Lane, Camana Bay, Grand Cayman, Cayman Islands.

2414/02414-000 current/47510452v1

20. <u>Pending Litigation</u>.  The SEC Action is the only litigation the Petitioners are aware of pending in the United States in which a Debtor is a party at the time of the filing of the Petition.  The following are the names and addresses of parties to the SEC Action, other than the Debtor:

<u>Caledonian Securities</u>
Sigal P. Mandelker
Margaret A. Dale
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036

<u>SEC</u>
A. David Williams
Richard E. Simpson
100 F. Street, N.E.
Washington, D.C. 20549

and

David Stoelling
Three World Financial Center
New York, NY 10281

<u>Verdmont Capital, S.A.</u>
Robert A. Zito
Theodore Y. McDonough
Carter Ledyard Milburn LLP
Two Wall Street
New York, New York 10005

<u>Clear Water Securities, Inc. and Legacy Global Markets S.A.</u>
Scottsdale Capital Advisors
Attn: Clear Water Securities, Inc./Legacy Global Markets S.A.
7170 East McDonald Road, Suite 6
Scottsdale, Arizona 85253

21. <u>Provisional Relief</u>.  The Petitioners have filed a motion for an order waiving Rule 1007(a)(4)'s requirement that the Petitioners list the names and addresses of the Debtor's customers and authorizing the Petitioners to file affidavits of service of documents served on the

Debtor's customers under seal. The SEC's address, as well as all other parties to the SEC Action, is set forth above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: February 16, 2015
      Grand Cayman, Cayman Islands

_____
Keiran Hutchison
Partner, Ernst & Young Ltd.