1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 15-10324(MG)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6

7   CALEDONIA BANK LIMITED,

8

9           Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12

13                  U.S. Bankruptcy Court

14                  One Bowling Green

15                  New York, New York

16

17                  February 16, 2015

18                  3:08 PM

19

20  B E F O R E :

21  HON MARTIN GLENN

22  U.S. BANKRUPTCY JUDGE

23

24

25

1   Hearing re:  The petitioners' ex parte application for a

2   temporary restraining order (Dkt. 4)

3

4   Hearing re:  Motion for an order scheduling recognition

5   hearing and specifying form and manner of service of notice

6   (Dkt. 5)

7

8   Hearing re:  Motion for entry of an order waiving the

9   requirements of Fed. R. Bank. P. 1007(a)(4) (Dkt. 7)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

```
 1   A P P E A R A N C E S :

 2   PROSKAUER ROSE

 3        Attorneys for the Debtor

 4        Eleven Times Square

 5        New York, NY 10036-8299

 6

 7   BY:  GOEFFREY RAICHT, ESQ.

 8        MARGARET A. DALE, ESQ.

 9

10   UNITED STATES DEPARTMENT OF JUSTICE

11        Attorney for the U.S. Trustee

12        U.S. Federal Office Building

13        201 Varick Street

14        Suite 1006

15        New York, NY 10014

16

17   BY:  BRIAN S. MASUMOTO, ESQ.

18

19   ALSO PRESENT:

20   MR. COWART - ASSISTANT U.S. ATTORNEY

21   MS. HOPKIN

22

23

24

25
```

1                    P R O C E E D I N G S

2          THE COURT:  We're here in Caledonian Bank Limited,

3    15-10324.  Let me make sure (indiscernible) working.  Sorry

4    it's a little dark in here, one series of lights doesn't

5    seem to be working this afternoon.

6          All right, let me have the appearances, please.

7          MR. RAICHT:  Good afternoon, Your Honor, Geoffrey

8    Raicht, R-A-I-C-H-T, from Proskauer Rose --

9          THE COURT:  Thank you.

10         MR. RAICHT:  -- for Caledonian Bank.  And I --

11         MS. DALE:  Margaret Dale.

12         MS. HOPKIN:  Leigh Hopkin (ph).

13         THE COURT:  Thank you.

14         MR. MASUMOTO:  Good afternoon, Your Honor, Brian

15   Masumoto for the Office of the United States Trustee.

16         THE COURT:  All right, thank you very much.

17         MR. COWART:  Good afternoon, Your Honor,

18   (indiscernible) from the U.S. Attorney's Office.

19         THE COURT:  I -- just tell me your last name

20   again.

21         MR. COWART:  It's Cowart, C-O-W-A-R-T.

22         THE COURT:  Thank you.

23         All right.  Mr. Raicht?

24         MR. RAICHT:  Your Honor, before we begin anything

25   just on behalf of the controllers we thank Your Honor for

1  allowing us to come in today for this TRO.  We acknowledge

2  it's a public holiday, and I'm sure the Court had other

3  plans for today, as well as the U.S. Trustee's Office and

4  the U.S. attorney.  We know it's unusual and we appreciate

5  it, and they would not ask for it if they didn't think there

6  was an urgency.

7          Your Honor, if I may propose just a little bit of

8  background --

9          THE COURT:  Sure.

10         MR. RAICHT:  -- of this case.

11         THE COURT:  I did read all the papers.

12         MR. RAICHT:  Okay.  So why don't I -- much of my

13  presentation would be in the papers, and without belaboring

14  you, what we are here for today, Your Honor, is to seek a

15  temporary restraining order for a period of time that

16  hopefully will bridge us first temporarily and then

17  ultimately to a recognition hearing.

18         I think there are probably a couple of things we

19  should talk about in terms of who we'd be seeking to enjoin

20  temporarily and why, and then if I may one issue about -- or

21  one just observation about the ultimate recognition hearing

22  just to make sure we put cards with Your Honor.

23         So there are approximately 1,500 depositors with

24  Caledonian Bank spread across the Cayman Islands, some are

25  mom and pops down in Cayman, U.S. depositors, and depositors

1    across the rest of the world.  I was actually speaking with

2    Mr. Masumoto a moment ago, I don't know precisely the

3    breakdown as to how much U.S. depositors there are, but what

4    I am advised is that of the top 30 U.S. depositors that

5    number is approximately less than $125 million of total

6    deposits.  The largest depositor being approximately

7    $100 million, and then the 30 largest being about $9,500.

8              THE COURT:  Tell me the top 30 in the U.S. total

9    how much?

10             MR. RAICHT:  Less than 125 million.

11             THE COURT:  Okay.

12             MR. RAICHT:  And refresh Your Honor's

13   recollection, it's about $580 million of total deposits.

14             THE COURT:  Okay.

15             MR. RAICHT:  So what we'd be looking to do today

16   is to enjoin depositors from taking -- commencing any

17   action, taking any action with respect to their accounts.  I

18   am concerned about commencement of actions, you know, either

19   to seize assets, then mention of potential involuntary

20   proceedings, preserve the status quo.

21             The controllers were appointed on Thursday, they

22   are very much trying to get their arms around who the

23   accounts are, where they're held, but the one thing they are

24   concerned about is a -- the dismemberment of the estate

25   before they can get off the ground.

1          So primarily the depositors will be looking to

2     enjoin.  We would of course give notice of the TRO to Judge

3     Pauley in the District Courts so he is aware of what we are

4     doing here.  Our TRO I believe is clear that we are seeking

5     this TRO would be subject to the TRO --

6          THE COURT:  Yeah, I saw that.

7          MR. RAICHT:  Yeah.

8          THE COURT:  I saw that.  And any changes that are

9     made to that TRO as well.

10          MR. RAICHT:  Correct, Your Honor.

11          We would be giving notice to the Cayman Island

12     monetary authority who is the regulator down in Cayman of

13     the bank.  We would be giving notice to the banks here in

14     the United States that are -- currently hold the deposits.

15     The shareholder of the bank.

16          I say a news article over the weekend, I don't

17     know how accurate it is, but the shareholder is seeking to

18     sell its interest in the bank to a third party.  I would

19     want to make sure that whatever the shareholder does does

20     not infringe upon what we're doing here.  And obviously the

21     defendants who are in the District Court action, I believe

22     that's probably who we'd be looking the likely parties would

23     be.

24          We were hoping for something between sort of to

25     Your Honor's views 10 to 14 days out on a preliminary

1     injunction basis and then obviously come back for a

2     recognition hearing.

3             THE COURT:  Just give me a second, I had a couple

4     of questions.

5             MR. RAICHT:  Sure.

6             THE COURT:  So there are accounts in Northern

7     Trust and in Morgan Stanley, Smith Barney.

8             MR. RAICHT:  Those are accounts but not depositor

9     accounts, those are accounts of Caledonian Bank.

10            THE COURT:  They're in the name of the bank.

11            MR. RAICHT:  Correct.

12            THE COURT:  All right.  Do any of the depositors

13    -- I mean are there any trust accounts, or are there any

14    accounts -- Caledonian accounts in the U.S. that are for the

15    benefit of, in trust for, any other designation of any of

16    the depositors of Caledonian?

17            MR. RAICHT:  Not that we're aware of, Your Honor.

18        (Pause)

19            THE COURT:  So are you seeking relief that would

20    apply to all 1500 plus depositors of Caledonian Bank or only

21    the U.S. depositors?

22            MR. RAICHT:  All 1500 depositors.

23            THE COURT:  Okay.

24            MR. RAICHT:  To the extent they want to come to

25    the U.S. and try and attack U.S., assets if there are assets

1    in the rest of the world, Your Honor, the stay -- or the

2    injunction would not apply outside the territorial

3    jurisdiction of the United States.  I wish it would, but

4    Congress did not give them that authority.

5         (Pause)

6              THE COURT:  Let me hear from Mr. Masumoto, then

7    from the Assistant U.S. Attorney as well.

8              MR. MASUMOTO:  Good afternoon, Your Honor, Brian

9    Masumoto from the Office of the United States Trustee.

10             Your Honor, we have -- we don't have any objection

11   to the TRO.

12             As Mr. Raicht indicated prior to the hearing we

13   did engage in some discussion regarding the operations and

14   the circumstances of the debtor.

15             One of the principal questions that we had was

16   whether or not -- or what was the total aggregate amount of

17   deposits associated with the U.S. depositors, and as

18   Mr. Raicht indicated they're still in the process of making

19   that determination.

20             Part of the concern was whether or not -- although

21   we're not taking a position now on the issue of recognition,

22   but if in fact recognition were denied then part of the

23   options might be for the controller side to file an

24   involuntary 7 or an 11 which would then allow the U.S.

25   depositors to look at the U.S. assets.

1            So if in fact there were deposits attributable to

2    U.S. depositors in excess of the amounts held in the U.S. we

3    would certainly have some concerns about where the rest of

4    the funds are.  My understanding is that the rest of the

5    funds, aside from the approximately 51 percent or

6    $301 million located here, are in the UK or in Switzerland.

7            And we've -- also in our discussions I wanted to

8    know if there were any recent transfers outside -- away from

9    the United States, and the discussion was that I guess in

10   the SEC hearing regarding their TRO there was some

11   discussion about movements of money, but none that were

12   attributable to transfer overseas.

13           So in that regard I guess they're still in the

14   process of determining exactly where the assets are and I

15   guess who the depositors are, and of course that's of

16   interest and concern to us.

17           One other point that I did want to make is we did

18   inquire as to whether or not the controllers had reached a

19   conclusion as to the solvency of the debtor.

20           As Mr. Raicht had indicated I had looked online

21   for some news articles and there was an article that

22   indicated that when the shareholders sought to file their

23   voluntary liquidation, which was denied by the Cayman grand

24   court, that the board of directors declined to give a

25   solvency opinion.

1        So from our standpoint, at least with respect to

2   the current debtor, we were interested in knowing -- the

3   U.S. Trustee is interested in knowing as to whether or not

4   the debtor is insolvent or not.  And -- but that again is in

5   process, they're not in a position to opine on that at the

6   moment.

7        So bottom line however, Your Honor, is based upon

8   all of our discussions the U.S. Trustee has no objection to

9   the TRO that's been sought.

10        THE COURT:  All right.  Mr. Cowart, do you want to

11   be heard?

12        MR. COWART:  Your Honor, the United States has no

13   objection to the (indiscernible).

14        THE COURT:  Mr. Raicht, does the SEC know you're

15   here?

16        MR. RAICHT:  Last -- two conversations.  Last

17   night, Your Honor, my partner, Margaret Dale, let the SEC

18   know that we would be filing a Chapter 15 today and seeking

19   a TRO.  The response was thanks.

20        Ms. Dale earlier today had a conversation with the

21   SEC, they were not -- they didn't indicate any interest they

22   would be attending today's hearing.  They were sent the TRO

23   papers --

24        THE COURT:  Okay.

25        MR. RAICHT:  -- they were told we were going to be

1   here.

2         THE COURT:  All right.  So do you have a copy of

3   the current injunction that Judge Pauley has entered?

4         MR. RAICHT:  Yes, Your Honor.

5         THE COURT:  I'd like to see that.

6         MR. RAICHT:  May I approach?

7         THE COURT:  Sure.  Please.

8   (Pause)

9         MR. RAICHT:  This is an injunction that was issued

10   on Friday on an ex parte basis.

11         THE COURT:  Yes.

12         MR. RAICHT:  (Indiscernible) superseded.

13         THE COURT:  This replaces it entirely, it doesn't

14   --

15         MS. DALE:  It does not replace it --

16         THE COURT:  Does not.

17         MS. DALE:  -- in its entirely.

18         THE COURT:  I got to read both of them together?

19         MS. DALE:  Yeah.  But the modified is more

20   relevant.

21         THE COURT:  All right.  Just give me a minute here

22   to read this, okay?

23   (Pause)

24         THE COURT:  So let me ask you this, and I know

25   this is in the papers, but tell me what's the aggregate

1   amount in Northern Trust and in each of Northern Trust and

2   Morgan Stanley?

3          MS. DALE:  Your Honor, there's 10 million -- the

4   aggregate in Northern Trust is 130 million now --

5   135 million, I have to look at the paper.

6          THE COURT:  Approximate.

7          MS. DALE:  Approximately, yes.  And there are

8   securities in the Morgan Stanley account of approximately

9   169 million.

10         THE COURT:  And so the -- as currently in force

11  the TRO obtained by the SEC assures that you'll maintain

12  what number is in each account?

13         MS. DALE:  We need -- to maintain $10 million in a

14  segregated account at Northern Trust and 66.67 million in

15  securities in the Morgan Stanley account.

16         THE COURT:  Okay.  And so what happens if I grant

17  the relief you're asking for today, does everything in those

18  accounts above the amounts that are secured, you know, that

19  you are restricted from transferring by virtue of the SEC

20  TRO, is it going to depart this jurisdiction?

21         MS. DALE:  It is not.

22         MR. RAICHT:  No, Your Honor, it is certainly not,

23  and the relief that we're seeking between now and the

24  recognition hearing status quo is preserved recognition

25  hearing suggests that at that point in time we -- that

1    the --

2              THE COURT:  Yeah, you're asking for the relief

3    under 1521 --

4              MR. RAICHT:  Correct, Your Honor.

5              THE COURT:  -- (a)(5) I guess it is.

6              MR. RAICHT:  Correct.

7              THE COURT:  You want to be able to administer the

8    assets in the Caymans.

9              MR. RAICHT:  Right.  And the bank is not doing

10   business, so there shouldn't be a need for depositors to be

11   met or to have money exchanged to go pay depositors, so it

12   should be sitting there for the next extra (indiscernible)

13   days.

14             THE COURT:  Okay.  But I didn't see anything in

15   the order you're asking me to sign that would prevent

16   Caledonian from transferring everything in its accounts

17   above the amounts that they're restricted from transferring

18   by the SEC.  Did I miss something?

19             MS. DALE:  I don't think you did, but it certainly

20   -- we should certainly add that.

21             THE COURT:  I'm just -- I'm not -- I'm just trying

22   to understand what -- you know, if I grant this relief no

23   depositors can take any action to recover any money that's

24   in these accounts, so they're handcuffed.  But I didn't see

25   anything in the order that would handcuff the foreign

1    representatives from transferring everything else out of the

2    U.S. and saying, oh, we've left what the SEC said we had to

3    keep.

4              MR. RAICHT:  Your Honor, we can put that language

5    in.  Certainly not the intention nor the understanding that

6    the money would leave the jurisdiction, so we'll put it in.

7              THE COURT:  Okay.  And I wasn't trying to -- I

8    wanted to make sure I was reading the -- I didn't have the

9    SEC --

10             MR. RAICHT:  Yes.

11             THE COURT:  -- I saw what you said about the SEC

12   injunction in your papers, but I didn't have that.

13             MS. DALE:  Well, Your Honor, and also with respect

14   to the SEC modified TRO --

15             THE COURT:  Yes.

16             MS. DALE:  -- the February 9th document --

17             THE COURT:  Yes.

18             MS. DALE:  -- paragraph 8, we have an agreement

19   with the SEC, which was a further stipulation, it was

20   actually just signed today, but it hasn't been entered by

21   the court, to delete paragraph 8 in its entirety, because

22   paragraph 8 had allowed business as usual to be conducted

23   above these amounts.

24             THE COURT:  Right.

25             MS. DALE:  So that paragraph 8 is going to be --

1    you know, once the controllers came into control we realized

2    that that wasn't really an operative provision any longer,

3    and the SEC agrees that that has to be removed.

4            THE COURT:  Okay.  So let me address some

5    questions about notice.

6            MR. RAICHT:  Yes, Your Honor.

7            THE COURT:  And you indicated that the identities

8    of the customers are required to be maintained as

9    confidential, but you referenced a Cayman law but didn't

10   attach it.  So, I don't know what it says.

11           MR. RAICHT:  Okay.

12           THE COURT:  And I think you refer to -- just give

13   me a second.

14       (Pause)

15           THE COURT:  You asked for a waiver of the

16   requirements of 1007(a)(4).

17           MR. RAICHT:  Yes, Your Honor.

18           THE COURT:  Which --

19       (Pause)

20           THE COURT:  -- and I think you were referring to

21   Rule 1007(a)(4)(B), unless the Court orders otherwise a list

22   containing, and then I'll switch to the end, all entities

23   against whom provisional relief is being sought in 1519.  So

24   you asked for waiver of that.

25           MR. RAICHT:  Correct, Your Honor.

1          THE COURT:  In 2002(q)(1) requires the clerk or

2     some other person ass the Court may direct shall forth with

3     give the debtor all persons or bodies authorized to

4     administer acquired proceedings of the debtor all entities

5     against whom provisional relief is being sought under 1519

6     of the Code.  That's notice.  And there's no provision about

7     the Court waiving any requirement for notice.  When you give

8     notice you're also required to file an affidavit of service

9     that you gave notice.

10          MR. RAICHT:  And just to be clear, we are

11     intending to give actual notice to all 1,500 depositors.

12     The issue would be the affidavit of service --

13          THE COURT:  Right.

14          MR. RAICHT:  -- where we list their names and

15     address, because that would be the issue that would --

16          THE COURT:  Okay.  Do you have a copy of that

17     privacy statute -- Cayman privacy statute that you referred

18     to?

19          MS. DALE:  I didn't bring it.

20          MR. RAICHT:  We didn't bring it, Your Honor.  We

21     can get a copy to chambers.

22          THE COURT:  Okay.  So --

23          MR. RAICHT:  And, Your Honor, if I may,

24     Mr. Masumoto and I have spoke to this -- about this issue

25     prior --

1          THE COURT:  Sure.

2          MR. RAICHT:  -- to the hearing and I think it was

3    the U.S. Trustee's position that think wanted some time to

4    think about this, and we certainly were not -- on the short

5    notice we have today and the issues Your Honor has if Your

6    Honor does not want to rule on the issue of waiving notice

7    that would be understandable, but I think that we would just

8    have to serve it in a way -- we're going to make sure we get

9    service done, and then filing the notice maybe we would just

10   do it how -- the way we think we best can do it in

11   compliance with the law, and then we'll have to take up this

12   issue a different time.

13         THE COURT:  Mr. Masumoto, do you want to --

14         MR. RAICHT:  Sorry, we can potentially represent

15   by account number without --

16         THE COURT:  Well, I'll tell you what I think

17   thinking about is I was going to make you file it under seal

18   because -- and I'll tell you why, okay?  If someone comes in

19   and objects --

20         MR. RAICHT:  Uh-huh.

21         THE COURT:  -- I want to see who they are.

22         MR. RAICHT:  Uh-huh.

23         THE COURT:  Okay?  I'm not looking to require

24   public disclosure of that which a generally applicable

25   Cayman law may prohibit public disclosure.

1            MR. RAICHT:  Uh-huh.

2            THE COURT:  And this precise issue hasn't come

3    before me, but there have been a number of sealing issues

4    under Section 107 of the Bankruptcy Code that have, and what

5    I -- I want to give you a chance to respond to this and

6    Mr. Masumoto.

7            What I'd be inclined to do is require you to serve

8    that list on the U.S. Trustee and file it under seal with

9    the Court, but I'm not looking -- I don't like the notion of

10   enjoining people who I have no clue who they are, okay?

11   That's a lot of what is motivating me.

12           MR. RAICHT:  Right.

13           THE COURT:  And the Code -- well the rules in 1001

14   that you did refer to, but 2002(q) --

15           MR. RAICHT:  Uh-huh.

16           THE COURT:  -- does require notice to anybody

17   you're seeking provisional relief over.

18           Let me hear from Mr. Masumoto and then I'll give

19   you a chance, Mr. Raicht.

20           MR. MASUMOTO:  Thank you, Your Honor.

21           Your Honor, as Mr. Raicht indicated we did have a

22   discussion regarding this matter.  From our standpoint we

23   have no problem with the sealing.

24           With respect to the disclosure we wanted to make

25   sure that the understanding was that the waiver issue would

1   not be addressed -- would not be decided today, and that

2   even if for purposes of the affidavit of service that the

3   names were not disclosed that ultimately when the issue was

4   before the Court and decided by the Court if the Court

5   determined it should be disclosed that they would

6   retroactively do so.  We didn't want any estoppel to arise

7   based upon today's affidavit of service.

8               THE COURT:  Yes.

9               MR. RAICHT:  That's correct, Your Honor, and I'm

10  just reviewing an email that -- from -- that I received

11  earlier in the day anticipating Your Honor's request of

12  potentially sealing the list, and it's my understanding that

13  the controllers would need to go back to the Cayman court to

14  effectively get a blessing that that would be okay.

15              THE COURT:  They may think so, but I might not.

16              MR. RAICHT:  Yeah, I understand, Your Honor.  And

17  I think it's okay from their -- really from their

18  perspective of their own liability, because that was -- and

19  that would be subject to the Cayman law that they would be

20  in violation of.

21              I guess, you know, one of the things, Your Honor,

22  we thought about perhaps somehow having account numbers

23  being the way to list them that way or we can defer this

24  issue for another day.

25              THE COURT:  Well what I'm prepared to do is defer

1  the filing under seal of the identities and contact

2  information of the depositors, but I want to make clear my

3  instincts as I'm going require you to file it under seal but

4  I'm not going to decide that.

5        So if the -- if your clients in the Caymans want

6  to go back to court and get the court there -- seek to get

7  approval two things, to provide to the U.S. Trustee -- to

8  file under seal with the Court and provide to the U.S.

9  Trustee, subject to the confidentiality restrictions, they

10  should go back and seek that, and without prejudice to the

11  U.S. Trustee's right to argue that it has to be publicly

12  disclosed.  Okay?  I'm not -- so I'm not precluding the U.S.

13  Trustee from taking that position.

14        MR. MASUMOTO:  Thank you, Your Honor.

15        THE COURT:  But -- and it'll also give you a

16  chance if you want to take another crack at convincing me

17  that you shouldn't have to do that.  I'm not trying to put

18  you on the spot today, but that sort of jumped out at me

19  when I read the papers.

20        MR. RAICHT:  Appreciate that, Your Honor.

21        THE COURT:  Okay?  And I mostly -- frankly, you

22  know, I'm going give you a schedule and if I start getting

23  objections I'm going to look against the list.

24        MR. RAICHT:  Of course, Your Honor.

25        THE COURT:  Okay.  Mr. Masumoto, is there anything

1    you wanted to add?

2           MR. MASUMOTO:  Nothing further, Your Honor.

3           THE COURT:  Okay.  So first with respect to the

4    request for the temporary restraining order applying Federal

5    Rule of Civil Procedure 65(b).

6           First the moving parties have established an

7    appropriate basis for seeking relief ex parte.

8           The affidavit submitted in support of the

9    temporary restraining order sets forth specific facts

10   clearly showing that immediate and irreparable injury, loss,

11   or damage will result to the movants before the adverse

12   party can be -- potential adverse parties can be heard in

13   opposition to the motion for temporary restraining order.

14          While the moving papers argue alternative grounds

15   for granting a temporary restraining order the Court

16   believes that applying the probability -- applying

17   probability of success and likelihood of irreparable injury,

18   both of those requirements for temporary restraining order

19   are satisfied.

20          With respect to probability of success the papers

21   submitted in support of the Chapter 15 petition establish a

22   probability of success of this chapter -- of the Cayman

23   proceeding being determined to be a foreign main proceeding.

24          Now, I understand that there -- the papers do a

25   good job of explaining whether under the banking law or the

1  bankruptcy law that this would be determined to be a covered

2  proceeding under Chapter 15, they've certainly shown

3  probability of success on that.

4        With respect to the likelihood of irreparable

5  injury the Court concludes that the moving papers, the

6  affidavit submitted in support of the temporary restraining

7  order clearly establishes the likelihood of irreparable

8  injury if immediate relief is not granted pursuant to

9  Section 1519 of the Bankruptcy Code.

10        The papers establish -- my term, not the term used

11  -- the potential run on the bank in insufficient proceeds

12  available on accounts held in the United States to satisfy

13  all creditor claims.

14        One of the governing overriding purposes of

15  Chapter 15 in the model law is to assure a fair and

16  equitable distribution to all creditors of a foreign debtor,

17  and when appropriate have the matter administered in the

18  foreign proceeding.

19        The papers also establish that one or more

20  attorneys have been actively seeking clients to pursue

21  matters in the U.S., and so the Court concludes that the

22  papers show a likelihood of irreparable injury if relief is

23  not granted.

24        Rule 65(b)(2) provides that a temporary

25  restraining order expires at the time after entry not to

1    exceed 14 days that the Court sets unless before that time

2    the Court for good cause extends it for a like period or the

3    adverse party consents.  Well you don't know who the adverse

4    party is right at the moment.

5              Because of the Court's schedule I will be away and

6    not available in 14 days, so I'm going schedule a

7    preliminary injunction hearing for February 25th at 2 p.m.

8    The objection deadline shall be Monday, February 23rd at

9    9 a.m.  And the deadline for replies should be February 24th

10   at 5 p.m.

11             Mr. Raicht, how quickly do you believe you can

12   give notice of the -- in setting the recognition hearing?

13   How quickly are you in a position to give notice?  See you

14   have to give 21 days, but frankly I think it's odd, but the

15   rules seem to say that objectors would have 21 days to

16   object.  So --

17             MR. RAICHT:  I'm glad Your Honor saw the same

18   ambiguity that I did.

19             We would propose that we're going to get

20   everything out the door, we're anticipating two business

21   days from today, so end of business day Wednesday.

22             THE COURT:  So 21 days after that is what?

23        (Pause)

24             MR. RAICHT:  March 11.  I think it's March 11,

25   Your Honor.

1          THE COURT:  Well what I'm going to do to -- I'm

2    going to schedule the hearing for March 17th at 11 o'clock,

3    I'm going to set an objection deadline of March 12th at

4    10 a.m., and a reply deadline of March 16th at 12 noon.

5          With those dates work for you?

6          MR. RAICHT:  Those are fine, Your Honor.

7          THE COURT:  Mr. Masumoto?

8          MR. MASUMOTO:  That's fine, Your Honor.

9          THE COURT:  Okay.  I want to give enough time if

10   people want to file their objections and you get a reply

11   and --

12         MR. RAICHT:  All right, thank you.

13         THE COURT:  Okay.  You've also asked for a waiver

14   of Section 1514(c).

15         MR. RAICHT:  Uh-huh.

16         THE COURT:  So 1514(c) deals with notice to

17   foreign creditors about the time for filing proofs of claim,

18   and I assume no dates have been set in the Caymans.

19         MR. RAICHT:  That's correct, Your Honor.

20         THE COURT:  All right.  So what I'm going to do is

21   I'm going to suspend the application of 1514(c) pending

22   further order of the Court, if necessary.

23         So the guidance that I've generally seen is don't

24   set the date until the foreign proceeding has set a date,

25   and then set the same date if that's -- but -- so, I'm going

1    to suspend, but not waive the requirements.  We'll just see

2    where things should go.

3                    MR. RAICHT:  Right.

4                    THE COURT:  Okay.  So the most important thing is

5    that you get -- we get an order filed and we'll do that with

6    the TRO.  So the TRO is granted effective February 16th,

7    2015 at 3:45 p.m., I'm supposed to note the date and time.

8                    MR. RAICHT:  Your Honor, we're going to make a

9    modification to the TRO regarding not transferring

10   everything -- any --

11                   THE COURT:  Yes.  You're agreeing to include that,

12   I'm not making -- I'm not ordering whether -- I'm not

13   determining whether what I would have had to do in the

14   absence of it, but it just -- it jumped out at me that that

15   was not --

16                   MR. RAICHT:  Yeah.

17                   THE COURT:  -- something that was -- do you have

18   it on a computer with you or --

19                   MR. RAICHT:  We sent an electronic copy to

20   chambers.

21                   THE COURT:  Okay.  Maybe what you can do is when

22   we finish the hearing work with Jason Pierce, my law

23   clerk --

24                   MR. RAICHT:  Right.

25                   THE COURT:  -- and let's make sure we get the

1  language.  You can come on in -- somebody can come into

2  chambers and we'll get that language included.

3          And I just want to make clear on the record,

4  inclusion of that language at this stage does not

5  necessarily mean that language will and won't remain in any

6  preliminary injunction that if one is -- if one is issued.

7          MR. RAICHT:  Yes, Your Honor.

8          THE COURT:  I just after -- we've had a discussion

9  about what my concern was there.  Yeah, I think if anything

10  it may go a long way to alleviate the concerns of --

11          MR. RAICHT:  Yes, Your Honor.

12          THE COURT:  -- some of your foreign depositors

13  that they know the money is -- whatever is there is there,

14  it isn't going anywhere in the meantime.

15          MR. RAICHT:  (Indiscernible), Your Honor.

16          THE COURT:  Okay?  Anybody else?  Anybody else

17  have anything they want to add?

18          MR. RAICHT:  Just again, Your Honor, thank you

19  very much for the time today --

20          THE COURT:  Quite all right.

21          MR. RAICHT:  -- and to Mr. Pierce as well, I know

22  this is a holiday and he'd rather be doing other things, but

23  we thank you again.

24          THE COURT:  Okay.  We're adjourned.

25          MR. RAICHT:  Thank you.

1          MR. MASUMOTO:  Thank you, Your Honor.

2          THE COURT:  Thank you, Mr. Masumoto.

3      (Whereupon these proceedings were concluded at 3:46 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           I N D E X

2

3                          RULINGS

4                                                        PAGE

5    The petitioners' ex parte application for a temporary

6    restraining order (Dkt. 4)                          22

7

8    Motion for an order scheduling recognition hearing

9    and specifying form and manner of service of notice

10   (Dkt. 5)                                             21

11

12   Motion for entry of an order waiving the requirements

13   of Fed. R. Bank. P. 1007(a)(4) (Dkt. 7)              25

14

15

16

17

18

19

20

21

22

23

24

25

1      C E R T I F I C A T I O N

2

3  I, Dawn South, certify that the foregoing transcript is a

4  true and accurate record of the proceedings.

5  Dawn South  Digitally signed by Dawn South
            DN: cn=Dawn South, o=Veritext, ou,
            email=digital@veritext.com, c=US

6  _____ Date: 2015.02.18 09:40:04 -05'00'

7  Dawn South

8  AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12  Date:  February 18, 2015

13

14

15

16

17

18

19

20

21

22  Veritext Legal Solutions

23  330 Old Country Road

24  Suite 300

25  Mineola, NY 11501